UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH E. SMITH,

             Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,[1]

             Defendant.

CASE NO. 3:16-cv-05712 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

---

    [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken, pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed. *See* Dkt. 12, 13, 14.

Plaintiff endured three deaths of women close to him -- his grandmother, mother, and fiancé -- all within a two-month time span, September through November 2012. *See* AR. 433. Plaintiff contends that when he filed his disability applications, the Social Security Agent selected his alleged date of disability onset in 2010, with "no contact with claimant." AR. 336. However, in his briefing, plaintiff contends that his disability began in December, 2012, shortly after the deaths of these three women. *See* Dkt. 12, p. 11.

On three different occasions, December 20, 2012; July 23, 2013; and November 4, 2014, two different examining doctors both opined that plaintiff suffered from a severe limitation in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *See* AR. 435 (Dr. Wheeler), 544 (Dr. Krueger), 642 (Dr. Krueger again). "Severe" means inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop. *See id*.

The ALJ failed to credit fully these opinions with a finding that they were based heavily on plaintiff's subjective complaints, however neither the ALJ nor defendant cites anything from the record demonstrating as such. *See* AR. 90. The ALJ also provided her own interpretation of the mental status examinations, finding that plaintiff's performance was "normal," however that was not the interpretation provided by the psychologists who performed the examinations and the finding by the ALJ is not supported by substantial evidence in the record as a whole. Although the ALJ also noted plaintiff's activities of

daily living of getting along with others, being able to socialize with his family, and visit public places, none of these activities demonstrate that plaintiff was able to complete a normal workday and workweek without interruptions from psychologically-based symptoms, nor do they demonstrate that plaintiff was able to maintain attention and concentration two hours at a time, eight hours per day, five days per week.

Therefore, the Court concludes that the ALJ failed to offer specific and legitimate reasons based on substantial evidence in the record as a whole for her failure to credit fully the opinions of plaintiff's examining doctors, Dr. Wheeler and Dr. Krueger.

After considering and reviewing the record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further administrative proceedings consistent with this Order.

BACKGROUND

Plaintiff, KENNETH E. SMITH, was born in 1968 and was 42 years old on the alleged date of disability onset of May 31, 2010. *See* AR. 293-99, 300-305. Plaintiff completed high school and attended college, but did not obtain a degree. AR. 104. He has work experience as a truck driver, transportation manager, plant supervisor and dispatcher. AR. 415-16. Plaintiff's last job was as a transportation manager for a trucking company, but the job ended when the company went out of business. AR. 105-106.

According to the ALJ, plaintiff has at least the severe impairments of "major depressive disorder; posttraumatic stress disorder ["PTSD"]; [and] personality disorder (20 CFR 404.1520(c) and 416.920(c)." AR. 82.

At the time of the hearing, plaintiff was living alone in a mobile home on his sister's property. AR. 115-16.

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 135-44, 146-55, 157-67, 169-79. Plaintiff's requested hearing was held before Administrative Law Judge Kelly Wilson ("the ALJ") on January 26, 2015. *See* AR. 99-133. On February 27, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 77-98.

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) The ALJ failed to provide legitimate reasons for rejecting the medical opinions of examining psychologists Dr. Wheeler and Dr. Krueger; (2) The ALJ did not provide any reasons germane to Cheryl Smith for rejecting her lay evidence; (3) The ALJ did not provide clear or convincing reasons for finding plaintiff not credible; and (4) The ALJ's residual functional capacity assessment was incomplete, as it did not include any limitations related to plaintiff's daytime somnolence. *See* Dkt. 12, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1)   **The ALJ failed to provide legitimate reasons for rejecting the medical opinions of examining psychologists Dr. Wheeler and Dr. Krueger.**

Plaintiff contends that the ALJ erred by failing to credit fully medical opinions from examining doctors, Drs. Wheeler and Krueger. *See* Dkt. 12, p. 3. Defendant contends that the ALJ properly weighed the medical evidence, arguing that the ALJ properly relied on a finding that both of these doctors relied heavily on plaintiff's subjective complaints regarding the severity of impairments. *See* Dkt. 13, p. 13.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

(quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at1199-1200).

Dr. Kimberly Wheeler, Ph.D. examined plaintiff on December 20, 2012. She noted that plaintiff was "overwhelmed with grief, sadness; frequently tearful; unable to stop thinking about [recent deaths]; marked severe." AR. 434. Dr. Wheeler performed a mental status examination ("MSE"). *See* AR. 436-37. She observed that plaintiff's attitude and behavior were guarded and reserved; his mood was severely depressed; and his affect was constricted. *See* AR. 436. She provided additional details, observing that his thought process and content were organized, but labored and slowed. *See id.* Regarding plaintiff's speech and motor slowing, she observed that he was demonstrating "rather significant motor retardation." AR. 434. Dr. Wheeler diagnosed plaintiff with "Major Depression, recurrent, severe with possible psychotic symptoms [and] Bereavement x3." *Id.*

Regarding specific functional limitations, Dr. Wheeler opined that plaintiff suffered from a severe limitation in his ability to complete a normal workday and

workweek without interruptions from psychologically-based symptoms. AR. 435.

"Severe" is defined on the form filled out by Dr. Wheeler as an "inability to perform the

particular activity in regular competitive employment or outside of a sheltered

workshop." *See id*.

Dr. Keith J Krueger, Ph.D., first examined plaintiff on July 23, 2013. AR. 541-52.

Dr. Krueger also performed an MSE. AR. 547-52. He observed that plaintiff's posture

was occasionally lethargic, his speech was frequently blocked, and his motor activity was

occasionally slowed. AR. 548. Dr. Krueger opined that plaintiff's judgment and

comprehension were fair and his level of insight was marginal. *Id*. He also opined that

plaintiff's memory and concentration were fair. *Id*. Dr. Krueger diagnosed plaintiff with

major depression, recurrent, with psychotic features, as well as the rule out diagnoses of

PTSD and Schizotypal personality disorder. AR. 543.

Like Dr. Wheeler, regarding specific functional limitations, Dr. Krueger opined

that plaintiff suffered from a severe limitation in his ability to complete a normal

workday and workweek without interruptions from psychologically-based symptoms.

AR. 435. "Severe" is defined on the form filled out by Dr. Krueger as an "inability to

perform the particular activity in regular competitive employment or outside of a

sheltered workshop," just as it was defined on the form filled out by Dr. Wheeler. *See id*.

Dr. Krueger also evaluated plaintiff on November 4, 2014. AR. 639-50. The

personality assessment inventory ("PAI") that Dr. Krueger again performed on plaintiff

showed "no change at all." AR. 639. Regarding the results of the PAI, Dr. Krueger noted

that plaintiff demonstrated "consistency in answering and validity [regarding the] extent

of PTSD and sometimes confused thought processes (including hallucinations)." AR. 640. The PAI also revealed a "significant level" of depression, and a tendency "to be isolated and avoidant, trouble with trust." *Id*. Again, Dr. Krueger opined that plaintiff suffered from a severe limitation in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. AR. 642. Dr. Krueger again conducted a MSE. AR. 643-50. He observed that plaintiff's posture was occasionally tense, his speech was occasionally blocked, and his motor activity was occasionally restless, noting that his "legs [were] bouncing constantly." AR. 644. Again, plaintiff's judgment and comprehension were fair and his level of insight was marginal. *Id*. Dr. Krueger assessed that plaintiff's memory and concentration were fair. *Id*.

The ALJ gave "minimal weight to the opinions of Dr. Wheeler and Dr. Krueger because they rely heavily on the claimant's subjective complaints regarding the severity of his impairments, which I found to be less than fully credible." AR. 90. However, the ALJ does not cite anything from the record to support this finding, and it is not supported by substantial evidence in the record as a whole. *See Ghanim*, 763 F.3d at 1162 (citing *Ryan*, 528 F.3d at1199-1200) ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion"). The Court already has noted in the preceding paragraphs many of the doctors' own observations and MSE test results.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination

allows the organization, completion and communication of these observations." Paula T.
Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford
University Press 1993). "Like the physical examination, the Mental Status Examination is
termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

In addition, the Ninth Circuit noted the following in an unpublished decision:

> Moreover, mental health professionals frequently rely on the
> combination of their observations and the patient's report of symptoms
> (as do all doctors); indeed the examining psychologist's report credited
> by the ALJ also relies on those methods. To allow an ALJ to discredit a
> mental health professional's opinion solely because it is based to a
> significant degree on a patient's 'subjective allegations' is to allow an
> end-run around our rules for evaluating medical opinions for the entire
> category of psychological disorders.

*Ferrrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011) (unpublished
memorandum opinion).

The ALJ also provided her own interpretation of the mental status examinations
("MSEs"), finding that plaintiff's performance was "normal," however that was not the
interpretation provided by the psychologists who performed the examinations and the
finding by the ALJ is not supported by substantial evidence in the record as a whole. The
Court already has discussed many of the observations by these doctors when performing
their MSEs that support their opinions, and demonstrate that plaintiff's MSEs were not
"normal."

The MSE generally is conducted by medical professionals skilled and experienced
in psychology and mental health. Although "anyone can have a conversation with a
patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's

'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The

Psychiatric Mental Status Examination 3. When an ALJ seeks to discredit a medical

opinion, she must explain why her own interpretations, rather than those of the doctors,

are correct. *Reddick, supra*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-

22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)

("When mental illness is the basis of a disability claim, clinical and laboratory data may

consist of the diagnosis and observations of professional trained in the field of

psychopathology. The report of a psychiatrist should not be rejected simply because of

the relative imprecision of the psychiatric methodology or the absence of substantial

documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)

(quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914

F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social

Security Administration, must be careful not to succumb to the temptation to play doctor.

The medical expertise of the Social Security Administration is reflected in regulations; it

is not the birthright of the lawyers who apply them. Common sense can mislead; lay

intuitions about medical phenomena are often wrong") (internal citations omitted)).

　　　Although the ALJ also noted plaintiff's activities of daily living of getting along

with others, being able to socialize with his family, and visiting public places, none of

these activities demonstrates that plaintiff was able to complete a normal workday and

workweek without interruptions from psychologically-based symptoms, nor do they

demonstrate that plaintiff was able to maintain attention and concentration for two hours

at a time, eight hours per day, five days per week. Therefore, the Court concludes that

this reason is not a legitimate rationale for failing to credit fully the opinions of plaintiff's examining doctors.

For the reasons stated, the Court concludes that the ALJ failed to offer specific and legitimate reasons based on substantial evidence in the record as a whole for her failure to credit fully the opinions of plaintiff's examining doctors, Dr. Wheeler and Dr. Krueger. The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Over the course of three examinations occurring over approximately two years, two examining doctors opined that plaintiff suffered from a severe limitation in his ability

to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Because of the consistency of this opinion and because severe limitation means inability to perform that activity in regular competitive employment, the Court cannot conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

Therefore, the error is not harmless. However, neither can the Court conclude with confidence that fully crediting these opinions would require a finding of disability. It is somewhat troubling that the evaluation forms provided by the Washington State Department of Social & Health Services request opinions regarding functional limitations that generally do not appear to equate with the opinions provided by vocational experts ("VEs") during administrative hearings. For example, although both doctors opined that plaintiff suffered from a severe limitation in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, the VE did not testify as to the effect of this particular limitation on someone with plaintiff's education, work history and other limitations, or if this particular functional limitation would render him disabled. It is unclear how long "interruptions" would last and what their effect would be. Instead, the VE testified that an individual with plaintiff's background and the ALJ's determination of plaintiff's RFC would not be able to work in any jobs if "the individual would be absent from the job two days per month consistently" and would not be able to perform any work if "the individual would be off-task 20 percent of the workday due to memory and attention deficits." AR. 131.

1    Does an inability to complete a normal workday and workweek without

2    interruptions from psychologically-based symptoms render an individual off-task 20

3    percent of the workday, or result in absenteeism for two days per month consistently? To

4    the Court, that appears to be the case, but it also is a question best left to the finder of

5    fact. If the medical opinions on this are ambiguous, the ALJ will need to re-contact the

6    examining doctors. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the

7    ALJ's duty to supplement the record is triggered if there is ambiguous evidence).

8        Therefore, this matter should be reversed and remanded for further administrative

9    proceedings, as opposed to reversed and remanded with a direction to award benefits. *See*

10   *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80

11   F.3d 1273, 1292 (9th Cir. 1996)) (remand for benefits is not appropriate unless "it is clear

12   from the record that the ALJ would be required to find the claimant disabled were such

13   evidence credited").

14   **(2)    The ALJ did not provide any reasons germane to Cheryl Smith for
          rejecting her lay evidence.**

15       Disputed is the evaluation of the lay evidence provided by Ms. Cheryl Smith.

16       Pursuant to the relevant federal regulations, in addition to "acceptable medical

17   sources," that is, sources "who can provide evidence to establish an impairment," 20

18   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

19   who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d). *See also*

20   *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R.

21   § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5,

2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner, supra*, 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The Court agrees with plaintiff that the fact that the lay evidence repeats similar limitations as plaintiff's testimony leads to the inference that the testimony is accurate. Furthermore, the Court notes that the ALJ's rejected the lay evidence with a finding that because Ms. Smith "is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statements is questionable." AR. 900. However, the Ninth Circuit has characterized lay witness testimony as "competent evidence." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). This suggests that an ALJ may not disregard lay evidence simply because the testimony is not from a medical source and is instead from one who "is not medically trained." *See id.; see also* AR. 900.

In addition, although the ALJ found that the lay testimony was not consistent with the medical evidence, the Court already has concluded that the ALJ erred when evaluating the medical evidence, *see supra*, section 1.

Therefore, the ALJ should re-evaluate the lay evidence following remand.

*//*

**(3)    The ALJ did not provide clear or convincing reasons for finding plaintiff not credible and the ALJ's residual functional capacity ("RFC") assessment was incomplete, as it did not include any limitations related to plaintiff's daytime somnolence.**

Similarly, the Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

As this matter is being remanded, the RFC will need to be assessed anew following remand of this matter. The ALJ should take care to address properly plaintiff's daytime somnolence.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 24th day of March, 2017.

J. Richard Creatura
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 15